**BOSTON GAS COMPANY, d/b/a Keyspan Energy Delivery, Plaintiff, Appellee,**

v.

**CENTURY INDEMNITY COMPANY, Defendant, Appellant.**

Certain Underwriters at Lloyd's London; Certain London Market Insurance Companies; Travelers Casualty And Surety Company; Associated Electric & Gas Insurance Services Limited; Aetna Casualty & Surety Company; The Hartford Insurance Company, Third–Party Defendants.

No. 07–1452.

United States Court of Appeals, First Circuit.

Nov. 18, 2009.

David L. Elkind, Barry J. Fleishman, John A. Gibbons, Mark H. Kolman, Kenneth B. Trotter, Dickstein Shapiro LLP, Washington, DC, Martin C. Pentz, Foley Hoag LLP, Boston, MA, for Plaintiff, Appellee.

Guy A. Cellucci, White & Williams LLP, Philadelphia, PA, David B. Chaffin, White and Williams LLP, Boston, MA, Barry H. Goldstein, Shane R. Heskin, Jeehae Jennifer Koh, O'Melveny & Myers, New York, NY, Paul R. Koepff, Brooklyn, NY, John A. Nadas, Choate, Hall & Stewart, Boston, MA, Laura A. Foggan, Wiley Rein LLP, Washington, DC, William P. Mekrut, Murphy & Riley, P.C., Boston, MA, James B. Conroy, Donnelly, Conroy, and Gelhaar, LLP, Boston, MA, George D. Kappus, John L. Rivkin, Alan S. Rutkin, Rivkin, Radler Bayh Hart & Kremer, Uniondale, NY, Steven G. Adams, Melito & Adolfsen P.C., New York, NY, Edward David Shoulkin, Taylor, Duane, Barton & Gilman, Boston, MA, Robert P. Firriolo, Thomas J. Quinn, Jr., Stephen T. Roberts, John McAndrews, Mendes & Mount, New York, NY, John T. Harding Boston, MA, Robert James Gilbert, Gilbert & Renton, Andover, MA, Eugene R. Anderson, Carrie Maylor, Anderson Kill & Olick, New York, NY, Amy Bach, Law Offices Of Amy Bach, Mill Valley, CA, for Defendant, Appellant.

Before BOUDIN and SELYA, Circuit Judges, and GELPI,* District Judge.

## JUDGMENT

This court's June 2008 decision, *Boston Gas Co. v. Century Indemnity Co.*, 529 F.3d 8 (2008), resolved a number of issues raised by the parties on appeal, and certified three further specific questions to the Massachusetts Supreme Judicial Court ("SJC") that related to the proper method under Massachusetts law of allocating among insurance companies responsibility for covered costs that arise as the result of ongoing environmental contamination. *Id.* at 23–24. Pending the SJC's decision, we retained jurisdiction and stated that we would "frame our ultimate decision and judgment after receiving such guidance on the certified questions as the SJC may be prepared to give." *Id.* at 24.

In a July 2009 decision, the SJC answered the first two certified questions, finding the third unnecessary to resolve given its answers to the other questions. *Boston Gas Co. v. Century Indemnity Co.*, 454 Mass. 337, 910 N.E.2d 290 (2009). Thereafter, we gave the parties an opportunity to provide their views to this court about what further action we should take, and Boston Gas and Century each submitted briefs containing their views on October 21, 2009; Boston Gas then asked for leave to file a supplemental memorandum and tendered that memorandum on October 29, and Century in turn filed a response on November 3.

1. In their October 21, 2009, submissions, the parties disagreed over whether the $6.2 million liability figure that the jury determined in the original trial represented (1) Boston Gas' liability for property damage that occurred only during the 1951–1969 period in which Century insured Boston Gas (as Boston Gas contends); or (2) Boston Gas' liability for property damage occurring over a longer period of time, including years when Century did not insure Boston Gas (as Century contends). *See also id.* at 345, n. 11, 910 N.E.2d 290 (describing this disagreement). The distinction did not necessarily matter under the district court's view that Massachusetts law adopted the all sums approach to liability, by which damage occurring in part during the insurance policy period, but unapportionable to that period alone, became the responsibility of the sued insurer (subject to policy limits); however, under the pro rata approach adopted by the SJC, it matters whether the amount found by the jury is that suffered during the period of Century coverage—and thus Century's responsibility—or is damage suffered over a longer period—leaving Century responsible only for a pro rata share.

Boston Gas emphasizes that the jury instruction on the damages issues asked the jury to determine, "What is the amount Boston Gas Company has been legally obligated to pay for the investigation and cleanup as a result of the property damage at the Everett site *caused during the years for which it had coverage*" (emphasis added), which might be read as referring to coverage by Century; on the other side, Century emphasizes that at trial Boston Gas seemed to admit that it was not possible to pinpoint the damages caused only during 1951–1969, and that this was itself a reason Boston Gas urged the all sums approach adopted by the district court.

In our earlier decision, we noted that "contamination seemingly occurred over a much longer period [than 1951–1969], even though no findings were made as to duration," *Boston Gas*, 529 F.3d at 12, but this

* Of the District of Puerto Rico, sitting by designation.

statement does not embody any determination as to what the jury understood its award to cover. In all events, the interpretation of the jury verdict, and how far it serves as a predicate for employing the pro rata approach adopted by the SJC, is a matter for the district court to determine in the first instance.

2. In its October 21, 2009, submission, Century revives its argument that it is entitled to judgment as a matter of law on the costs of removing contaminated soils and liquids from two underground storage tanks that were buried at the Everett site, claiming that because the removal took place after 1969 and was outside of Century's policy period, Century cannot be liable. But as we explained in our decision, Boston Gas "offered evidence that the tanks may have been contaminated at some earlier point [before 1970] and that the contamination generally had spread throughout the Everett site and beyond." *Id.* at 17. We held that whether this was so was "for the jury to resolve." *Id.* Nothing in the SJC's opinion affects our conclusion that the jury could have found, based on evidence Boston Gas presented, that contamination from the tanks could have begun prior to 1970.

3. In their October 21, 2009, submissions, the parties disagree over whether the jury already implicitly determined the size of the self-insured retention ("SIR") on the missing policy covering the period 1951–1960: Century argues that the jury determined that the SIR was $100,000 because the jury adopted Boston Gas' argument that the missing policy had the same terms as subsequent policies, while Boston Gas argues that the jury determined there was no SIR in the missing policy because the jury did not explicitly find any SIR. In our original decision, we noted that the jury did not determine what the SIR limits were on the missing policy, *id.* at 12, n. 3,

but our comment was not intended to resolve the dispute now proffered by the parties. Again, it is for the district court in the first instance to interpret the jury's verdict and to determine how far it serves as a predicate for implementing the SJC's pro rata approach.

4. Relatedly, on remand the district court may also need to determine whether the missing policy contained an own-property exclusion, because this might affect how much of the remediation costs can be recovered by Boston Gas. Century argues in its October 21, 2009, submission that this issue was stipulated to before trial, but we leave it to the district court to determine if that is so and whether the stipulation should control. We noted in our original decision that "each of the policies Boston Gas purchased from Century" contained an own-property exclusion, *id.* at 16, but this statement should not preclude a determination otherwise as to the missing policy if the facts warrant and the stipulation (assuming one exists) permits or is deemed not to control.

\* \* \*

Having addressed the issues raised in the parties' post-SJC decision submissions to us, we now return the case to the district court for further proceedings, which may include a further trial on such issues as the court determines to be required. This litigation, plainly unusually complicated, has been well-handled in the district court, which used its best judgment in the face of a division of authority in the state courts and great uncertainty as to what the SJC itself might ultimately decide. Needless to say, now that critical legal issues have been resolved, and Massachusetts law has been definitively resolved by the SJC, the parties ought to consider whether a settlement between them is

**24**

feasible before more time and expense is devoted to further litigation.

In the event further litigation is required, we note that we have sustained the district court on various rulings so identified in our prior decision, and on these rulings the district court has effectively been affirmed. The district court may rely on such prior determinations by it or the jury as it determines to have been unaffected by the two appellate decisions and may in due course reinstate such portions of its prior judgment as it deems appropriate in light of either of these decisions and any further proceedings it may conduct.

Nevertheless, because of the interrelationship of the issues now resolved and others that must now be revised on remand, it is uncertain until further proceedings are conducted in the district court precisely what will be the terms of the judgment ultimately entered by the district court. We therefore *vacate* the judgment of the district court and *remand* for further proceedings consistent with this judgment, the decision of the SJC on the certified questions and our own prior decision resolving other claims of error independent of the questions certified to the SJC. Each side will bear its own costs.

*It is so ordered.*